The next case called is number 121094, People v. Walter Relerford, Agenda No. 3. Counsel, are you ready? Fisher, you may proceed. Good morning, Honors. Counsel, I'd like to say please support Assistant Attorney General Garson Fisher for the People. Your Honors, by 2009, the traditional intentional threats model of the stalking statute was inadequate to deal with the myriad ways in which stalkers and cyberstalkers could injure their victims through the use of the Internet, email, and other modern communication technology. So the General Assembly amended the statute. They made criminal any course of conduct directed at a specific person that the defendant knew or should know would cause that person to experience fear or other severe mental suffering. Now, the defendant argues that the amended statute runs afoul of two provisions of the Constitution, due process and the First Amendment. I'd like to begin by addressing due process because that's the basis on which the First District struck down the statute. The First District held that this case was governed by the United States Supreme Court's decision in Alonis. That is incorrect. I think the parties agree that that's incorrect, that Alonis doesn't control this case. Alonis was not a constitutional case. It was a statutory interpretation case. And the statute being interpreted was not only not the Illinois stalking statute. It also wasn't the very similar federal stalking statute. It was the federal threat statute, which in contrast to the statute at issue here is entirely silent as to the mens rea requirement. And all they said there was as a matter of statutory construction. And in that silence, the proper way to read the statute was the most common traditional criminal mens rea of intent. But they explicitly said that Congress could have passed a broader statute with a different mens rea. And that's what we have here with our stalking statute. So, of course, the question becomes, as this court articulated in Hollins, does the statute capture a significant amount of conduct wholly unrelated to its purpose? And it does not. The purpose of the statute. We can't get a little more narrowly tailored than saying that writing or saying things that would cause someone, some reasonable person to become emotionally distressed, that doesn't violate the First Amendment? Your Honor, I'm happy to turn to the First Amendment. And it does not. As I mentioned, our statute is very similar to the federal statute. It does not simply say any writing or speech that causes someone to become upset violates criminal law. What it says is that a course of conduct directed at a victim that the defendant knows or should know would cause that person to fear for her safety or suffer emotional distress, which is then further defined as significant mental suffering. That that is criminal. And the easiest way to see that it doesn't violate the First Amendment is the basis on which the federal circuit courts, both the First and Ninth, have upheld the federal stalking statute, which is to recognize that this statute doesn't criminalize speech. It criminalizes a course of conduct. That course of conduct may not include speech at all. And the U.S. Supreme Court has said that just because a criminal course of conduct can be carried out in part, as it was in this case, and as it was in the federal challenges to the stalking statute, in part through the use of language, doesn't mean it violates the First Amendment. Under the Gabon exception, speech that is inherent to a criminal course of conduct is not protected by the First Amendment. And to the extent that speech is implicated by our stalking statute is only in so far as it advances a course of conduct directed at the victim that the defendant should know is going to cause that victim to experience, to fear for her safety or experience significant mental suffering. And we're talking about injuries to stalking victims that in many ways are very similar to the types of consequences of daily life, requiring care from medical professionals, hospitalizations, and in the most severe cases, suicidal thoughts and even death. The research shows that stalking victims suffer these severe mental consequences at more than double the rate of the general population. Can I ask a question about how the statute is written? Specifically it says in the course of conduct he or she knows or should know that that would cause, that conduct would cause a reasonable person to suffer other emotional distress. And the reasonable person is defined as, I'm missing this, that he knows or should have known that would cause a reasonable person to fear for their safety. So my question is, does the actor have to anticipate whether this kind of conduct will affect one person differently from another person? How does that work? No, I don't think it does. A reasonable person in the victim's position. I don't think it does. I think in fact what this sort of two objective standards on either side of that, of that course of conduct, that the defendant knew or should have known and that a reasonable person would fear for her safety or suffer severe, experience severe mental suffering. I'm sorry again. So it's a reasonable person defined as a person in the victim's circumstance with a victim's knowledge of the defendant and the defendant's prior acts. So not any reasonable person but a specific kind of reasonable person. I think that's just saying that the, you know, there are going to be certain circumstances, you know, a public figure for example. The question, would a defendant know or should a defendant know that certain speech about a politician is going to cause significant mental suffering would ask a different question than targeting a private figure, an ex-significant other spouse or girlfriend or boyfriend. And so we're looking at the defendant, the defendant's position. But we're also in some ways narrowing the statute by saying the mere fact that this particular defendant may have experienced, you know, some of these injuries due to being a more fragile sort of egg shell victim so to speak wouldn't mean that the defendant had committed a crime if a reasonable person wouldn't have experienced those injuries. So on the one hand, by saying that they knew or should have known, you are protecting against the defendant who, no matter how outrageous their conduct is, defends themselves by saying, well, I didn't know that these outrageous acts were going to be conveyed to the defendant. And one of the things that we talked about that the Internet allows or empowers stalkers to do is to use unwitting third parties to commit the injuries on their behalf. But could the defendant argue, I said these things on the Internet, but I didn't know this specific victim would react in this way? They could say, I thought this victim was tougher than that. But, of course, by saying that the standard is a reasonable person situated as the victim, that would not protect them from criminal liability for their acts that they should have known were going to cause injury. Mr. Carson, count one of the indictment doesn't mention the Facebook posts at all. Does this make a difference in the First Amendment issue? Well, I think it's relevant to the First Amendment analysis. This is a facial challenge, so not directly to the court's analysis, but the specifics of this case. But I do think it highlights why the statute doesn't violate the First Amendment, which is mainly that there doesn't have to be any communication as part of the course of conduct directed at the victim, and that when there is communication, it's inherent in that already criminal course of conduct of acting in a way the defendant should know is going to cause these injuries, either fear for the victim's safety or significant mental suffering. Or anxiety or alarm. Or anxiety or alarm. And, again, that's severe mental suffering, anxiety or alarm. Substantial. No, wait. Significant mental. Substantial in the federal statute. I was going to ask you, why didn't the circuit court enter a sentence on counts two, three, and four? I don't recall specifically why they didn't enter a sentence on those counts. I would go check and address that directly on rebuttal, but my reflection is that they may have merged as a factual matter into each other because the course of conduct that even though there's more than one act comprising the course of conduct, there's still one course of conduct that's targeting the victim. But, Your Honors, even beyond, just to continue addressing the First Amendment since that's where we've kicked off, even beyond the fact that under the Boni exception, and because this statute criminalizes the course of conduct and only its speech inherent to that conduct, even under strict scrutiny, I don't think that we could devise a more narrowly tailored statute that actually addresses the government's substantial legitimate interests in this case. The argument becomes, in some cases, a litany of really horrible acts committed by defendants in various courts that wouldn't be captured if you removed one or another amendment from the statute. Your Honor, you mentioned the argument that a defendant can make. I didn't know that this victim was going to experience these things. I thought that she was tougher than that. Or I didn't know that my Facebook friends would convey the horrible messages I repeatedly put online to the victim. She's not my friend. Or I didn't intend to harm the victim. I just intended to entertain the unwitting third parties who I recruited to cause the harm on my behalf. As I mentioned, Congress took a very similar approach to the General Assembly in addressing these issues. I think the reason is because this is the only way to protect victims against the very serious, very real injuries they suffer as a result of stalking without allowing some conduct that causes those injuries. And the defendant knew she caused those injuries or should have known what caused those injuries to escape capture. It is limited in some ways. It requires that the course of conduct be directed at the specific victim. It doesn't simply cover any course of conduct that would upset the victim. It requires this fairly high standard of either fearing for their safety, which is the more traditional injury, or significant mental suffering, anxiety, or alarm. And it does have to what extent it furthers the protection of this statute from First Amendment. On First Amendment grounds, it does have an exception built in for otherwise legitimate First Amendment speech. Obviously, the brief to the contrary. You have a parade of horribles. They present a parade of horribles. I'm going to give you an opportunity. If someone posts on Facebook, I hear that this married person is having an affair. Is that a crime? No, Your Honor. Why? For a couple of reasons. First, we have in the hypothetical, as you've laid it out, there's no course of conduct. It's a single incident. It does it twice. Hmm? It does it twice. So we've addressed the first issue. Second, I think that one could ask whether that course of conduct is directed at the victim or, in fact, was an effort to inform their spouse that their significant other was cheating on them. So that would be an issue that would have to be addressed. And second, I don't think that a defendant would know that certainly that wouldn't cause the victim to fear for his or her safety. So the question is this significant mental suffering. I don't think having one person say online, you know, I heard so-and-so is having an affair, is the kind of thing that causes the injuries we're talking about here, you know, missing work, requiring professional medical help. Now, if the course of conduct continued, you know, if they were communicating repeatedly to, you know, to the public and to the person's spouse and to their coworkers, not only that they heard that they were having an affair, but, you know, specific alleged salacious details of this affair, and it continued, and they maybe recruited other people to post hostile, you know, vicious comments on the victim's Facebook wall, you know, attacking them for their alleged conduct in this affair, there would be a point at which it would rise to the level of criminal conduct. And that's okay. That's not a violation of the First Amendment because you have at this point now a course of conduct directed at a person that they should know is going to cause significant mental suffering. So I think the hypothetical, as you initially laid it out, falls short of criminal conduct. But, you know, that doesn't mean that that's put in escalated to something that constitutes stalking. The court has further questions on this. The defendant suggests that perhaps if we wanted to sever part of the statute, in other words, communicates to or about a person, that perhaps the statute could survive. If you're opposed to that, is that correct? I think it would be contrary to the General Assembly's intent in passing the amendments to the statute. They were explicitly trying to address the new ways in which the Internet and e-mail and other modern communications technology had opened up for stalkers to injure their victims. And I think removing the communication to or about someone, language from the statute, would actually be contrary to the legislative intent in passing the amendment. Could the statute function absent that language? Probably. But I think it would be contrary to the General Assembly's intent in passing it were this court to do so. If the court has no further questions on the First Amendment, I would like to address due process as well. I mentioned briefly that Alanis doesn't control here. This statute, and we've talked about the government's purpose in passing the statute, the statute is written on its face to explicitly only apply when the government, when the types of injuries that the government is attempting to prevent are at issue. The language limiting the criminal statute to situations where the defendant knew or should have known that the defendant would fear for her safety or suffer significant mental, experience significant mental suffering limits the statute to exactly those circumstances where the government's interest is at issue. So I don't think that one could argue that the statute captures significant conduct wholly unrelated to the government's legitimate interest. Are you saying that the appellate court's reasoning using Alanis is flawed? And is that different from the judgment? I think that the First District's reliance on Alanis is entirely misplaced. Alanis was not a due process case. It didn't address the federal stalking statute, much less the Illinois stalking statute. It addressed the federal threat statute that was silent as to mens rea, and all it did was say that in that silence the best way to construe the statute was to read in intent, which is the most common traditional criminal mens rea. But it explicitly said that Congress could have passed a broader statute with a different mens rea, and that's what you have both in the federal and state stalking statutes. So I don't think Alanis, I think Alanis is, for example, far less persuasive authority for this court to consider than the federal circuits that have upheld the federal stalking statute on First Amendment challenges. And that while there's the court held below that the statute violated substantive due process, when this court conducts its noble review of that judgment, it's essentially conducting a due process analysis for the first time because the First District didn't apply the Holland standard and didn't ask the question that it needed to ask about whether the statute captured significant conduct unrelated to the legitimate purpose. Mr. Fisher, I note that the stalking statute requires knowingly engaging in a course of conduct, and the cyber stalking does not. It just talks about when you engage in a course of conduct and so forth. Is that significant for our due process evaluation considerations? I don't think so because the cyber stalking statute still requires a course of conduct directed at a specific victim, which I think addresses the concern that otherwise might arise from the absence of that word in the cyber stalking statute. To be fully honest, I can't discern a reason why the General Assembly might have chosen to omit knowingly from the cyber stalking statute when it's included in the stalking statute and think they effectively function the same way. Would it be necessary for us to read that in in order to find it satisfies due process? I think it would be reasonable to read it in. I don't think it's necessary because of the requirement that the course of conduct be directed at the victim imputes a sort of intentionality to the course of conduct that protects against the concerns that might arise if there were no criminal intent or knowledge component to the statute at all. I think there is still a criminal intent component to the statute, even in the omission of the word knowing in that clause. Thank you. Unless your honors have any further questions. Thank you. Thank you, Mr. Fisher. Mr. Yeaston. Mr. Yeaston. Jonathan Yeaston, state public defender on behalf of my client, Walter Reliver. Your honors, these aren't stalking statutes in any ordinary sense of that word. Instead, the legislator created new felony offenses of negligent infliction of emotional distress, specified that those offenses can be committed through mere words, and mislabeled those offenses as stalking and cyber-stalking statutes. Now, you heard Mr. Fisher argue that this somehow is just like the stalking legislation that Congress passed. Well, here, with the new stalking and cyber-stalking statutes, we have negligent or knowing immense as to the harm. The federal statute specifically requires that the speaker act with intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill. Illinois' statute completely lacks that requirement. That's why it's distinguishable. In fact, that's why our briefs in this case even included that federal statute in the appendix to show the difference. Few laws have ever made so much of what we do or say a felony as this new statute. Under these new provisions, every time we admit that we ought to have known better than to have done or said the distressing thing we did, we are effectively confessing to a predicate act of stalking. These laws have turned much of our personal discourse and even more of today's emotive protest into a crime. Whether this court looks at it under the free speech over-breath framework, whether it looks at it as content-based and therefore under strict scrutiny, or whether it does the due process framework in validating statutes that sweep in innocent conduct, this court should find subsection A of both those statutes unconstitutional. This court has traditionally looked to the over-breath doctrine first under the First Amendment, and there's a good reason for that. So long as an over-broad statute remains on the books, it threatens the rights not just of the claimant before the court, but everyone who might censor themselves for fear of running afoul of police or prosecutors. The measure here is whether there's a substantial number of applications that are unconstitutional, judged in relation to the statute's plainly legitimate sweep. There's an astounding number of unconstitutional applications here, most of which are in the briefs the State doesn't even seriously dispute. Not only would this reach something like the intentionally mean-spirited teasing by teenagers, it reaches communications that would knowingly distress not only their recipient but who they're about, such as the example of a disclosure online of a spouse having an affair. Contrary to Mr. Fisher's beliefs, I'm quite confident that in almost every case, a prosecutor will be able to prove that a comment like that, in fact, would cause a reasonable person significant anxiety alarm or other emotional distress. One of the remarkable facts about this statute is it doesn't, the comment may not even actually distress anybody so long as it would distress a reasonable person. And beyond that, the statute sweeps in merely negligently distressing comments, thus leaving us liable to be charged and convicted as stalkers based on the reasonably misconstrued joke or hyperbole. Typically, with over-breadth analysis, we'd look first to what the statutes do. Here, subsection A makes everybody a stalker if one undertakes any combination of two or more acts directed at someone that he knows ought to know would cause a reasonable person emotional distress. It appears the state is newly arguing that that phrase directed somehow invents a new intentionality mens rea that the legislature had actually stripped by the statute. I note that the next part, section C, essentially takes whatever limitation directed at what have in the statute out of it when it says it's included but not limited to acts in which a defendant directly, indirectly or through third parties by any action, means, device or means and then gives a list of certain behaviors. Some of those are things that sound ordinary for stalking such as following and observing, but then it says communicates to or about a person or engages in other non-consensual conduct. That phrase communicates to or about is practically a definition of the kind of speech that's protected by the First Amendment. Now, the State has suggested in various ways that this statute really only targets conduct. Apparently because the legislature redefined speech as conduct and then banned conduct, it managed to right its way around the First Amendment. Right. Are you saying that following or surveilling a person is First Amendment conduct? No, Your Honor. I'm just giving the instance of the breadth of the statute. In almost all instances, that would be not a First Amendment-protected conduct. Our primary concern here is because it's what Mr. Relford is charged with in every count, is the phrase communicates to or about. Now, communicates to or about is practically a definition of what the First Amendment protects. And that has consequences. When the government restricts speech, when it restricts communications to or about others, it's the government that bears the burden of proving the constitutionality of its actions. Here the State seems to be saying that because the legislature relabeled speech as conduct, then criminalized the newly defined speech-infused conduct, it can get around the First Amendment entirely. Relatedly, they make this argument that this can be fit into a First Amendment exception for speech integral to criminal conduct. But even that narrow exception doesn't work here. In recent cases, the Supreme Court has been clear that it doesn't apply where the conduct at issue consists of communicating a message. That came up in the humanitarian law project case a few years ago, and it was reaffirmed by the U.S. Supreme Court just this past June. Instead, that exception only works where the speech is the instrumentality of committing some other crime, such as solicitation of prostitution is the example, because their words are used with the specific intent to further some other criminal purpose. Here our legislature got rid of any further criminal purpose and banned the words themselves. Communicate twice online in a way that would significantly alarm or cause anxiety, and that renders you a felony stalker. It's the speech that is at issue, not some other general criminal purpose. That is also why the federal stalking statute is distinguishable from the new Illinois statute. The federal stalking statute requires a course of conduct done with intent to kill harm, that list I read out earlier. We got rid of that requirement of any intent to threaten, any intent to cause fear, instead allowing fear by the simply misconstrued communication under a mere negligence standard. And this court has rejected similar state arguments in the past. The three-site people be clicked, that was the original telephone harassment statute. The legislature tried to get around the speech problem by saying that telephone harassment can occur, even if no conversation actually occurs by dialing somebody. This court saw through that and saw that when it was trying to ban telephone harassment with intent to annoy, what was really at issue there was speech and not just conduct. Rhonda, the other exception that the state has raised in the briefs is the true threat exceptions. But where the legislature eschewed any intentional threats-based definition of stalking, it eschewed any claim to fit within this exception. The Supreme Court has defined true threats as those statements where the speaker means to communicate a serious expression of intent to commit an unlawful act of violence. First, that means to be a threat. One of those elements is that it has to be an expression of the speaker's intent to act in the future. But most communications that knowingly or negligently distress are not even that. For example, a couple of weeks ago we saw a county commissioner down in Texas put on the county's Facebook page, get out now or die. Plainly that's a communication that would cause fear of safety in its recipients. That's the entire point. The appeal to fear is what makes it effective. But that would make it a predicate act of stalking under Illinois statute. But it's not a threat in any ordinary sense or even any legal sense because it's not threatening to do something in the future. Second, the threatened act has to be something violent or even unlawful. Here, the die case in the Fifth District had an example where a defendant said something that could have been construed as a threat to file a legal ethics complaint. Now, that would certainly unnerve and render anxious its recipient, but it doesn't work as something that can be prosecuted because it's not an unlawful act. It also has to be a serious expression of intent to do something. That's the Watts case from the Supreme Court where in the context of a protest, a protester said, if they ever make me carry a rifle, the first man I want to get in my sights is LBJ. The Supreme Court realized that sometimes in the context of political protests or even in our ordinary lives, there's going to be hyperbolic, crude statements that sound like literal threats, but that in context really aren't because they're not serious expressions of intent to do anything. They're just blowing off steam. And fourth, the speaker has to know or at least or intend that the recipient understand the communication as a threat. This is why the joking phrase, I'm going to kill you, said over, like, say, reasonably understood it as an actual death threat. Because the danger here is that we censor ourselves based on others' reasonable misinterpretations of what we say. And thus, out of the risk that we'd be held liable for the misplaced joke, the misplaced comment, so much of our speech is swept in that we're forced to remain silent. Now, not only is this a speech case, it's the most severe kind of speech restriction. It's a speech restriction that's content-based. And here it's content-based under a number of axes. Therefore, the state has to prove that it's narrowly tailored to a compelling state interest. The state doesn't seriously seem to contest that it's content-based. It's worth briefly explaining why. First, a legislation is content-based where it depends for its effect on listeners' reactions to the speech. Listeners' reactions to speech is not a neutral basis for regulation. We've seen this over and over from the Supreme Court, finding communications that disparage, bring into death's repute or offend to be content-based regulations. Communications that distress are no different. One of the other remarkable things about the statute is it doesn't reach just communications to somebody, but also communications about them to third parties. In order to determine whether the statute applies in cases like that, you need to look at what the statute actually says. What is the subject matter? Who is the comment about? That makes it content-based in the most literal definition of the term, relying on the subject matter of the communication. And given that it's content-based on those axes, the state must prove that it's narrowly tailored to a compelling interest. It cannot do that because this statute is vastly, vastly over-inclusive. Not only does it sweep in examples such as a parent telling a child that the family pet had died. That's plainly a communication that would cause emotional distress. Yet the state would not even, you know, purport to claim that that's the kind of thing that would escalate into homicide, which seems to be its rationale. The primary rationales that the state has seemed to be arguing is, first, that somehow knowing or negligently distressing communications, whether we're talking about the family pet, the disclosure of the affair, or other harsh words said online, somehow presage an escalation into murder. There's some dispute into the briefs as to whether the studies actually support that. But the U.S. Supreme Court's First Amendment precedent here is clear. Even if there's a strong correlation between speech and some later criminality, that's not enough to ban speech. If this correlation between speech and criminality were enough, we'd see different results from the U.S. Supreme Court in the incitement cases, in the advocacy of law-breaking cases, or something. A more recent example, the violent video game case, where the Supreme Court had all sorts of data before it that violent video games might lead to later criminality, yet it said that that wasn't even a legitimate rationale. The state also, pretty newly in its reply brief, suggested that the real interest is in protecting people from emotional harms. The U.S. Supreme Court has rejected that rationale over and over, that a mere desire to shield the audience from the emotional harms of speech is not even a legitimate reason, let alone one that can justify criminalizing certain kinds of speech. If that were a legitimate reason, we'd see different results in all the obscenity cases that are described in the briefs. Now, the legislature has all sorts of options here. The federal stalking statute, which doesn't single out communications to or about and requires intent, seems to get most of the cases they want, and it's a lot narrower. Frankly, it looks a lot like our predecessor stalking statutes that'll still be enforced. Even if this Court strikes down subsection A of both these statutes today, we're still going to have the subsection A3 of the stalking statute that bans threats. There's a subsection of the cyber-stalking statute that'll be enforced that bans threats. We'll still have the harassment through electronic communications statutes that ban threats. Threats are banned under the intimidation statutes in Illinois. Some of the state's examples, such as they're given non-consensual pornography example in the brief, our legislature has learned how to pass narrower things, and they banned that one a couple of years ago. The legislature has so many narrower options that sweeping in all of our discourse isn't necessary for them to do this. One of the issues in the brief is the question of severability. Mr. Relaford's position is that striking that most constitutionally offensive phrase, communicates to or about from the statute, is enough to resolve this case. Mr. Relaford was charged with communications under each count of the indictment, and to answer Your Honor's question earlier, my memory is that the trial court did find under the one-act-one-crime doctrine that each of these offenses merges. It's kind of an unusual merger problem because you have overlapping courses of conduct done contemporaneously, but that order from the trial court is not under review here. But it was worth noting that communications are alleged in each of those. Count one begins with alleging that he knowingly engaged courts of conduct by calling and communicating with Blakely at the office and communicating via e-mail. That's the gravamen of that charge. It doesn't have the Facebook post in that charge. It does have the e-mail and the phone calls. Because of that, I think this court's precedent does suggest that you can cut out that phrase, it's enough to resolve the case. However, that would just leave for another day this broader due process question of can the legislature pass a general crime of negligently or knowingly inflicting emotional distress. The due process answer to that is no. The State here argues that United States v. Lonis doesn't inform this case at all because it is merely a statutory construction case. And to be sure, Lonis doesn't have an express due process holding. It went up to the Supreme Court as a First Amendment case. They avoided that First Amendment question through an exercise of statutory construction. But Lonis used the exact same language that this court has used time and time again of striking down statutes on their face for sweeping in too much innocent conduct. Lonis talked about how, citing Morrissette, that the wrong mental state, the mental state of mere negligence as to how it would be interpreted as a threat was not enough to separate the wrongfully intended from the innocent conduct. This court has a familiar tradition of invalidating statutes that lack that mental state. The State argues Hollins. Hollins was not one of those cases that really focused on the lack of mental state. And it didn't do anything to disturb all those cases this Court has seen before, such as the identity theft statute, the hidden compartment car statute, the stolen title statute, or the arson statutes. The dangers to due process right here by a mere negligence mental state of the statute are much greater because it sweeps in any conduct directed at somebody that knowingly or negligently distresses. And thus gets just about any thoughtless actor or gesture. It can be read to apply to wholly innocent conduct. It doesn't bear a rational relationship to a legitimate state purpose. There's dozens of hypotheticals between Mr. Relaford's briefs and the brief of Michi that are plainly things that are swept in by the statute, the misconstrued gestures, or even the knowingly distressing gesture, that I don't think prosecutors really want to go target here. One of the problems with crimes this broad is that enforcement's inevitably going to be piecemeal because it's in the unpredictable hands of line prosecutors and officers on the beat. The State seriously doesn't mean, I think, to go try to prosecute every act in which one communicates or does anything that distresses another knowingly or negligently. They don't have the manpower for that. What that means is that the average citizen in Illinois is going to be left to guess as to which ones they prosecute. That has consequences. It means that enforcement's going to be inevitably discriminatory as states' attorneys in all 102 counties have to set standards as to what kind of distress is enough to make it worthy of conviction. And what will inevitably occur is that the politically unpopular and the powerless will be those that are prosecuted, whereas those of high status will go free. So we have a case here where it's an intern and her supervisor at a job that happens to be a popular radio host. Your Honors, therefore, I'd ask you to strike subsection A of each of the statutes from the books, find it unconstitutional under both free speech and due process, and affirm the appellate court's vacator of Mr. Relaford's conviction. Thank you, Mr. Easting. Reply. Thank you, Your Honors. The defendant seems to concede, and I think rightfully so, that the federal statute would be constitutional if Illinois statutes were exactly identical. And one of the points of contention here is exactly how different these two statutes are. The two statutes are actually quite similar. It is true that the federal statute includes language intent to, in the broadest sense, since that's, I think, what's most relevant here, intent to harass, or placed under surveillance with intent to harass, which I think is quite similar in its effect to the course of conduct directed at a specific victim. But once you move beyond that, the two become even more similar. Both actually have reasonable person standards for the likelihood of inflicting the injuries that are considered by the statutes. That injury is defined in the Illinois statute as significant mental suffering. In the federal statute as substantial emotional distress. I think those two are essentially the same standard of injury. So looking at the two statutes, I think in terms of their scope, the differences are almost entirely cosmetic. I think that the Illinois statute, to the extent that the course of conduct directed at a specific victim is perhaps a bit broader than intent to harass, it serves a valuable purpose in advancing the purpose of the statute in that it avoids, again, the sort of defense, no matter how outrageous the conduct is, that, well, it wasn't my intent to do this. I just wanted to amuse the people I was speaking to online, or I was sharing the pictures with online. And, indeed, the fact patterns of the cases that the federal courts have considered are also very similar. Particularly the First Amendment case that we discussed in our brief was a situation where the defendant, after repeatedly asking his ex-girlfriend to get back together with him, then shared explicit images with recurrent and former coworkers as a form of harassment. I don't think that there is a meaningful distinction in terms of it constituting speech between sharing images and using words to describe explicit sexual acts you want to perform with your victim, as in this case. Your opponent has used some terms that sound like tort ideas. And, basically, I think he's arguing that this statute criminalizes what we'd see as a tort of negligence, infliction of emotional distress. Is that true? I don't think so, Your Honor. And, first, in any event, there's some conduct that constitutes both a tort and a criminal act. The two systems serve different purposes. One is to recompense the victim for her injury. The other, society's interest in both as a deterrent and in punishing the defendant for their crime. But I also think that the specific language of the statute requiring, of course, conduct directed at the victim and requiring that they fear for their safety or suffer significant mental experience, significant mental suffering is somewhat different than the standards for negligent infliction of emotional distress. If this court says, well, those are reasonable ways within the First Amendment to read, for example, the injury standard, what is required to show injury under negligent infliction of emotional distress or the crime of stalking, it would actually, I think, be a reasonable way to possibly to interpret what significant mental suffering means, if the court has lingering concerns about the constitutionality of the statute. Don't we talk in the tort situation about outrageous conduct? Isn't that sort of how we deal with these problems about emotional distress, not a significant alarm or whatever? We talk about outrageous conduct and those kind of ideas? And I think conduct that the defendant knows is going to cause these injuries. As we've talked about, both parties have our sort of parade of horribles that we argue either are or are not encompassed by various versions of this statute. I think the fact is that universally, the parade of horribles that they have laid out are examples where the defendant would not know or would not have caused to know that a reasonable person would suffer severe mental suffering as a result of it. Telling your children, I'm sorry, the family pet has died, leaving aside issues of whether that constitutes a course of conduct and whether it's directed at the victim, doesn't cause one to know that they're going to cause a reasonable person to miswork or to have to see a mental health professional or to have suicidal thoughts. The defendant implies that the reason that this case is prosecuted is because you had a defendant who was, from a societal, cultural standpoint, less powerful than his victim. His victim testified that she experienced fear and in fact she was forced to miswork as a result of his conduct, which of course extended beyond simple language. But his conduct, which culminated with, I think most egregiously, the outrageous Facebook posts, caused her to miswork, caused her to experience fear. She suffered the injuries that the General Assembly was setting out to punish when one knowingly or should know that one's conduct is going to cause them. And that's why this was a case that was prosecuted, even if perhaps the facts of this case aren't as egregious as some of the other fact patterns from the Ninth Circuit or First Circuit case. Although, again, the First Circuit case is strikingly similar. If this court thinks that the distinctions between the federal statute and the state statute are where its concerns about the First Amendment lie with the Illinois statute, then, and again, I think the changes, those differences are cosmetic from a First Amendment analysis perspective. But if those differences are the breaking point for the constitutionality of the statute, then hopefully the court will be clearer about that, because the General Assembly clearly has an intent to protect this substantial interest in protecting the victims from these harms. And obviously they set out to do it in a constitutional manner. We think they did it here, but if a slight tweak to the language and more closely monitor the language in the federal statute is all it takes to get the job done, then hopefully that guidance will be provided. A couple of other quick points. Defending questions whether emotional harms are a legitimate government interest to protect against in this way. This court upheld the previous stalking statute, recognizing the defendant's terror and apprehension as legitimate, protecting against the victims, excuse me, suffering terror and apprehension, which are clearly emotional harms, as legitimate interests of the government. And the government's purpose in amending the statute didn't eradicate its purpose in having a stalking statute in the first place, which this court has recognized as a legitimate one. It merely expanded the scope of conduct that was captured, because we no longer live in a world where you have to show up down the street to cause these kinds of injuries to your victims. And then turning briefly to the question of due process and the relationship of Collins to the cases that came before it, I think that when Collins said captures substantial amount of conduct wholly unrelated to the legitimate purpose of the statute, it was explicitly clarifying the meaning of the wholly innocent conduct phrase that had been used frequently before it, in cases like the identity theft statute, the hidden compartments statute. Of course, any time the General Assembly moves beyond sort of mal and per se crimes, they are taking conduct that was previously deemed innocent and criminalizing it, and they often do so with specific intent, but sometimes they do so with a lesser mens rea of recklessness or even strict liability crimes. This court has certainly never held, and it would require a radical rewriting of a lot of our statutes, that anything less than criminal intent automatically renders the statute in violation of due process. So the question becomes, when does a statute violate substantive due process? And I think Collins made quite explicit that the answer is when it captures a substantial amount of conduct wholly unrelated to its purpose. I don't think Collins somehow stands apart from the substantive due process cases that came before it. Unless your honors have any further questions, people will ask that this court reverse the first district and find that the Stockey and Cyberstockey statute survive both first amendment and due process scrutiny. Thank you, your honors. Thank you. Case number 121094, Peoples v. Delaford, will be taken under advisement as agenda number three. Mr. Fisher and Mr. Easting, thank you for your arguments today. You are excused.